**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JERMAINE WILLIAMS, | : | Hon. Dennis M. Cavanaugh |
| Petitioner, | : | |
| | : | Civil No. 11-0604 (DMC) |
| v. | : | |
| OSCAR AVILES, et al., | : | **OPINION** |
| Respondents. | : | |

**APPEARANCES**:

    JERMAINE WILLIAMS, A 088 437 893/ID 238-726
    Hudson County Correction Center
    35 Hackensack Avenue
    Kearny, New Jersey 07032
    Petitioner Pro Se

**CAVANAUGH, District Judge**

    Jermaine Williams, confined at the Hudson County Correctional Center in Kearny, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his detention in the custody of the Department of Homeland Security ("DHS"). This Court will summarily dismiss the Petition without prejudice to the filing of another petition after June 3, 2011, if DHS fails to remove Petitioner within the presumptively reasonable six-month period and Petitioner can allege facts "provid[ing] good reason to believe that there is no significant likelihood of removal [to Jamaica] in the reasonably foreseeable future," as required by Zadvydas v. Davis, 533 U.S. 678, 701 (2001).

## I. BACKGROUND

Jermaine Williams, a native and citizen of Jamaica, challenges his detention in the custody of DHS. Williams emigrated to the United States from Jamaica on October 22, 1998. DHS officials took Petitioner into custody on September 2, 2009. On July 15, 2010, an Immigration Judge ordered Petitioner removed to Jamaica. Petitioner appealed, and on December 3, 2010, the Board of Immigration Appeals dismissed the appeal. Petitioner asserts that "immigration authorities have incarcerated petitioner since September 2, 2009 **even though he poses no significant danger or flight risk,** while he has no longer challenged the Government's efforts to remove him." (Docket Entry #1, p. 1) (emphasis in original). Petitioner contends that his "prolonged detention, without a hearing to determine if such detention is justified, violates both the Immigration and Nationality Act (INA) and the Constitution." Id., p. 2.) Petitioner asserts the following facts:

> Petitioner is a native and citizen of Jamaica who has been detained for over 16 months pending completion of removal proceeding. On July 15, 2010, the Immigration Judge denied Petitioner application and ordered the Petitioner removed from the United States to Jamaica. The Petitioner appeal[ed] the decision of the Immigration Judge to the Board of Immigration Appeals. The BIA reviews the Immigration Judge's findings of fact, and dismissed the Petitioner's appeal on December 03, 1010. **It is Not Expected that the Consulate General of Jamaica will issue any travel documents for the Petitioner in the reasonable and foreseeable future, and the Petitioner pose[s] No threat to the community,** and had been working on and off for years and taking care of his kids.

> \* \* \*

> Petitioner **Jermaine Williams** emigrated from Jamaica to the United States in October 22, 1998, at the age of __. He has no familial ties to his country of origin and almost no remaining

2

> knowledge of its culture. His entire family resides legally in the United States. Upon entrance to the workforce, he became a hard worker as a Landscaper where he work[ed] for 7 years, and began his new life and career in a new country. Petitioner's parents are both elderly and ill and depend on his income for both medical treatment and other financial facets, and his kids depend on him. His current detention at Hudson County Correctional Center has both put a strain on his family financially and mentally, as the constant worry of their father, future has caused degradation in their schoolwork, and well-being. The petitioner plans on attending school to finish his course in general construction and to begin a new career once released.

(Docket Entry #1, pp. 3, 4) (emphasis in original).

Petitioner executed the § 2241 Petition (presently before this Court) on January 25, 2011. The Clerk received and filed it on February 1, 2011. Petitioner contends that his prolonged detention is not statutorily authorized under Zadvydas v. Davis, 533 U.S. 678 (2001), and violates procedural and substantive due process. He seeks a Writ of Habeas Corpus directing respondents to release him under supervision.

## II. DISCUSSION

A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 8.1 (4th ed. 2001). This Court has subject matter jurisdiction over the

Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his detention is not statutorily authorized and violates his due process rights, see Zadvydas, 533 U.S. at 699. See Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir.2005) (recognizing that the Real ID Act did not eliminate district court habeas jurisdiction over alien's challenge to detention).

B. Standard of Review

Habeas Rule 4 requires a district court to examine a habeas petition prior to ordering an answer and to dismiss the petition if the petitioner is not entitled to relief. See 28 U.S.C. § 2254 Rule 4, applicable through Rule 1(b). Habeas Rule 4 provides in relevant part:

> The clerk must promptly forward the petition to a judge . . . and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

28 U.S.C. § 2254 Rule 4, applicable through Rule 1(b).

"Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." McFarland v. Scott, 512 U.S. 849, 856 (1994); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). Dismissal without the filing of an answer or the State court record is warranted "if it appears on the face of the petition that petitioner is not entitled to relief." Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989); see also McFarland v. Scott, 512 U.S. 849, 856 (1994); United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (habeas petition may be dismissed where "none of the grounds alleged in the petition would entitle [the petitioner] to relief").

C. Legality of Detention

The Immigration and Nationality Act ("INA") authorizes the Attorney General of the United States to issue a warrant for the arrest and detention of an alien pending a decision on whether the alien is to be removed from the United States. See 8 U.S.C. § 1226(a). Specifically, § 1226(a) provides:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General —
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on —
>
>     (A) bond of at least $1,500 . . ; or
>
>     (B) conditional parole; but
>
> (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.

8 U.S.C. § 1226(a).[1]

---

[1] "The district director may . . . consider release from custody, upon such terms and conditions as the district director may prescribe, of any alien described in paragraph (c)(2)(ii) of this section who has been in the Service's custody for six months pursuant to a final order of deportation terminating the alien's status as a lawful permanent resident." 8 C.F.R. § 236.1(c)(6)(ii). To be eligible for discretionary release, see 8 C.F.R. § 236.1(c)(6)(iii), such alien who is not subject to mandatory detention must "demonstrate, by clear and convincing evidence, that release would not pose a danger to the safety of other persons or of property. If an alien meets this burden, the alien must further demonstrate, by clear and convincing evidence, that the alien is likely to appear for any scheduled proceeding . . . in order to be considered for release in the exercise of discretion." 8 C.F.R. § 236.1(c)(3).

Section 1226(b) provides that "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b).

However, for certain criminal aliens, § 1226(c) mandates detention during removal proceedings. See 8 U.S.C. § 1226(c). Section 1226(c) provides:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who--
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (d) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness,

> potential witness, or person cooperating with such an investigation,
> and the alien satisfies the Attorney General that the alien will not
> pose a danger to the safety of other persons or of property and is
> likely to appear for any scheduled proceeding. A decision relating
> to such release shall take place in accordance with a procedure that
> considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court upheld the constitutionality of mandatory detention under § 1226(c), and ruled that such mandatory detention during removal proceedings under § 1226(c) is a constitutionally permissible part of the removal process. "[T]he statutory provision at issue governs detention of deportable criminal aliens *pending their removal proceedings*. Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 527-28.

"Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) requires the Attorney General to detain aliens during the removal period: "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2); Zadvydas, 533 U.S. at 683. "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231 (a)(1)(C).

Significantly, the removal period does not begin until the latest of several events occurs, one of which is the date the removal order becomes administratively final. See 8 U.S.C. § 1231(a)(1)(B). Specifically, § 1231(a)(1)(B) provides:

> The removal period begins **on the latest** of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added).

If DHS does not remove the alien within the removal period, then § 1231(a)(6) authorizes the Attorney General to either release or continue to detain the alien. Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court held that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. The Court cautioned that, "once removal is

8

no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6)]." Id. at 699. To guide habeas courts, the Court recognized six months as a "presumptively reasonable period" of post-removal-period detention. Id. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. See also Clark v. Martinez, 543 U.S. 371, 384 (2005).

The above discussion demonstrates that the statutory authority to detain an alien depends on where the alien is in the removal process. Section 1226(a) provides the Attorney General with discretionary authority to detain or to release aliens on bond or conditional parole prior to the removal period. Section 1231(a)(2) mandates detention during the removal period established in § 1231(a)(1)(B), and § 1231(a)(6) provides the Attorney General with discretionary authority to detain aliens beyond the removal period, or release them under supervision. See Diouf v. Mukasey, 542 F. 3d 1222, 1228 (9th Cir. 2008). To determine which statute may authorize Petitioner's detention, this Court must determine the beginning of Petitioner's removal period under 8 U.S.C. § 1231(a)(1)(B).

As explained above, the removal period begins on the latest of three dates: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. See 8 U.S.C. § 1231(a)(1)(B). Option (iii)

9

does not apply to Petitioner, since he does not indicate that he was detained for non-immigration purposes. Option (ii) does not apply, as Petitioner states that he is no longer contesting his removal.[2] Accordingly, Petitioner's removal period began on the date the order of removal became administratively final, i.e., December 3, 2010 (when the Board of Immigration Appeals affirmed the order of removal).[3] Accordingly, Petitioner's removal period began on December 3, 2010, and will not expire until March 3, 2011, at the earliest. Because §1231(a)(2) mandates detention during the removal period, Petitioner's detention (at the time he filed the Petition and today) is statutorily authorized. Moreover, mandatory detention during the removal period does not violate due process. See Demore, 538 U.S. at 527-28.

As Petitioner's detention is authorized by 8 U.S.C. § 1231(a)(2) and does not violate due process, this Court will dismiss the § 2241 Petition. The dismissal is without prejudice to the filing of a new § 2241 petition (in the district of Petitioner's detention) in the event that the DHS is unable to remove Petitioner during the presumptively reasonable six-month period under § 1231(a)(6), and Petitioner can assert facts showing good reason to believe that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future.[4]

---

[2] This Court has researched PACER and has found no Court of Appeals docket showing that Petitioner filed a timely petition for review.

[3] An order of removal becomes "final upon the earlier of –(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). Since the BIA affirmed the order of removal on January 29, 2010, that is the date Petitioner's order of removal became administratively final within the meaning of 8 U.S.C. § 1231(a)(1)(B)(i).

[4] In addition, if Petitioner believes he is unlikely to be removed in the near future, he may request the DHS to review his situation. See 8 C.F.R. § 241.13(d)(1) ("An eligible alien may
(continued...)

## III. CONCLUSION

For the reasons set forth above, the Court will dismiss the Petition and deny Petitioner's applications for an order to show cause and the appointment of counsel as moot.

_____
DENNIS M. CAVANAUGH, U.S.D.J.

DATED: __Feb 14__, 2011

---

[4](...continued)
submit a written request for release to the HQPDU asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future. The alien may submit whatever documentation to the HQPDU he or she wishes in support of the assertion that there is no significant likelihood of removal in the reasonably foreseeable future").